**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-cv-61960-BLOOM**

U.S. COMMODITY FUTURES
TRADING COMMISSION,

       Plaintiff,

v.

MINTCO LLC, RICHARD ZIMMERMAN,
and STUART RUBIN,

       Defendants.

_____/

**CONSENT ORDER OF PERMANENT**
**INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF**
**AGAINST MINTCO LLC**

## I.      INTRODUCTION

On October 7, 2015, Plaintiff U.S. Commodity Futures Trading Commission (the

"Commission" or "CFTC") filed its First Amended Complaint for Injunctive and Equitable

Relief and Penalties Under the Commodity Exchange Act against Mintco LLC ("Mintco"), for

violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26 (2012) and the

Commission's regulations promulgated thereunder ("Regulations"), 17 C.F.R. § 1.1 *et seq.*

(2016).

## II.      CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Mintco,

without a trial on the merits or any further judicial proceedings, Defendant Mintco:

    1.     Consents to the entry of this Consent Order for Permanent Injunction, Civil

Monetary Penalty and Other Equitable Relief Against Mintco ("Consent Order");

2.      Affirms that it has, through its principals, read and agreed to this Consent Order voluntarily and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce its consent to this Consent Order;

3.      Acknowledges service upon it of the summons and Complaint;

4.      Admits the jurisdiction of this Court over it and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.      Admits the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6.      Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7.      Waives:

(a)     Any and all claims that it may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2016), relating to, or arising from, this action;

(b)     Any and all claims that it may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c)     Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     Any and all rights of appeal from this action;

8.     Consents to the continued jurisdiction of this Court over it for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Mintco now or in the future resides outside the jurisdiction of this Court;

9.     Agrees that it will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10.     Agrees that neither it nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or the Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect its: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Mintco shall undertake all steps necessary to ensure that its agents and employees under its authority or control understand and comply with this agreement;

11.     By consenting to the entry of this Consent Order, Mintco neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law in this Consent Order, except as to jurisdiction and venue, which it admits.  Further, Mintco agrees and intends that the Findings of Fact and Conclusions of Law contained in this Consent Order shall be taken as true and correct and be given preclusive effect, without further proof, but only in the course of: (a) any current or subsequent bankruptcy proceeding filed by, on behalf of, or against Mintco; and (b) any proceeding to enforce the terms of this Consent Order.  Mintco does not

3

consent to the use of this Consent Order, or the Findings of Fact and Conclusions of Law in this Consent Order, as the sole basis for any other proceeding brought by the Commission.  Mintco does not consent to the use of the Consent Order, or the Findings of Fact and Conclusions of Law in this Consent Order, by any other party in any other proceeding.

12.     Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 71 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against it, whether inside or outside the United States.

13.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Mintco in any other proceeding, nor does any provision of this Consent Order render this Consent Order admissible in any proceeding not involving the Commission.

### III.     FINDINGS AND CONCLUSIONS

The Court being fully advised in the premises finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, Permanent Injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.  The Findings and Conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES TO THIS CONSENT ORDER AGREE AND THE COURT FINDS:**

**A.      Findings of Fact**

**The Relevant Parties**

14.      Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2016).

15.      Defendant Mintco is a Florida corporation, with its principal place of business in Delray Beach, Florida.  Mintco has never been registered with the Commission in any capacity.

16.      Stuart Rubin ("Rubin") resides in Florida.  He is the Chief Executive Officer, a principal, and 50% owner of Mintco.  Rubin is not currently registered.

17.      Richard Zimmerman ("Zimmerman") resides in Florida.  He is the President, a principal, and 50% owner of Mintco.  He is currently registered with the Commission as an associated person of a registered introducing broker.

**Relationship with Worth Group Inc.**

18.      From July 16, 2011, through the filing of the CFTC's complaint in this matter ("the relevant period"), Mintco conducted its customers' financed precious metals transactions through Worth Group Inc. ("Worth").

19.      Worth is a Florida corporation formed in June 2002 that has previously gone by the names of Wilshire Capital Management Corp. and Worth Bullion Group Inc.  Worth describes itself as "a Florida-based precious metals wholesaler [that] might also be described as a dealer or broker of precious metals."  Worth has never been registered with the Commission in any capacity.

20.     Plaintiff CFTC brought an action against Worth in the Southern District of Florida, *CFTC v. Worth Group, Inc., et al*., Case No. 13-cv-80796-KLR (S.D. Fla., complaint filed August 13, 2013), alleging, inter alia, that Worth defrauded retail precious metals customers and engaged in illegal, off-exchange leveraged commodity transactions with retail customers. On February 1, 2016, the Court entered a Consent Order of Permanent Injunction and Other Statutory and Equitable Relief Against Worth which permanently enjoined it from further violations of the Act and imposed civil monetary penalty and restitution obligations (ECF No. 194).

**Mintco's Business**

21.     Mintco marketed stored precious metals to retail customers on both a fully-paid basis, in which customers paid the full purchase price in return for precious metals, as well as on a financed basis, in which customers paid a portion of the purchase price and financed the remainder through Worth.

22.     Mintco solicited customers through telemarketing and a website, to engage in leveraged, margined, or financed precious metals transactions as well as fully paid precious metal transactions.

23.     None of the precious metals transactions Mintco marketed to retail customers were executed on or subject to the rules of a board of trade or exchange that had been designated or registered by the Commission as a contract market or derivatives transaction execution facility for precious metals.

24.     Mintco served as an "introducer" or "retailer" to providers of metal, primarily Worth.  Mintco did not generally buy or sell any financed or stored metal itself.  Instead, it

accepted customer orders and funds, charged a commission on the transaction, and forwarded the orders and funds to Worth or other providers of metal.

25.     The retail customers Mintco dealt with consisted mostly of individual retail investors with aggregate discretionary investments of less than $5 million who used their Mintco accounts for speculative purposes, rather than because they were involved in a line of business related to precious metals, and were not eligible contract participants ("ECPs") or eligible commercial entities ("ECEs") as defined by the Act.

26.     Between July 2011 and January 2013, upon receipt of customer funds, Mintco charged an up-front commission of between zero and fifteen percent of the full value of the metal purchased for its role in introducing the customer to Worth.

27.     From January 2013 to November 2014, rather than an up-front commission, Mintco charged its own premium or "markup" of between zero and ten percent on the price of the metal purchased.  This percentage was calculated based on the purchase price of the metal, quoted by Worth, and then added into the ultimate purchase price paid by the customer.  The difference between the customer's initial down payment and the total value of the metal purchased was considered the loan balance, and the customer was charged interest on this balance.

28.     The mechanics of the fully-paid stored transactions Mintco marketed, worked similarly to the financed transactions except that customers did not use financing to make the initial metals purchase and therefore were assessed the commission or mark up (depending on the time frame) as well as Worth's account opening fee and storage costs, but not the interest costs associated with leveraged purchases.

29.     Worth maintained physical metals inventories at two depositories, where it held its unallocated metals in a master account in Worth's name.  During the relevant period, Worth was the signatory on this account.

30.     When a financed retail customer entered into a transaction to purchase metal through Mintco, upon notice from Mintco, Worth sent instructions to the depository to "allocate" the appropriate type and quantity of metal from Worth's master account to a "sub-account" in the customer's name.  The allocation was a book entry, where the depository adjusted its records to reflect a paper change in the quantity of metals in Worth's master account and the customer sub-account; the physical metal resided in the same vault as when it was unallocated.  The depository, who was Worth's agent, maintained possession of the physical metal after the allocation, not the retail customer.

31.     The retail customer received a piece of paper from Worth with the words, "Commodity Title Transfer Notice," on it.  The document expressly prohibited the retail customer from granting a security interest in, or conveying any right with respect to "their" metal to anyone except Worth after they received this document.

32.     Worth was also the signatory for the depository agreements related to the customer sub-accounts.  Neither Mintco, nor the retail customer had a contractual relationship with the depository.

33.     Worth maintained control over the customer sub-account, both before and after any allocation.  Under the agreements with both depositories, only Worth had the ability to transfer physical metal to and from a customer sub-account.

34.     Because the retail customer never had possession and control of the metal in this process, actual delivery of precious metal to the retail customers did not occur.

35.     During the Relevant Period, none of the leveraged, margined, or financed precious metals transactions entered into with, or offered to, the retail customers by Mintco were conducted on or subject to the rules of any board of trade, exchange, contract market, or derivatives transaction execution facility.

36.     During the Relevant Period, Rubin and Zimmerman were the principals of Mintco and the signatories on Mintco bank accounts.  Rubin and Zimmerman each had authority to hire and fire Mintco employees and sign contracts on behalf of Mintco.

37.     During the Relevant Period, Mintco, through its employees and agents, misrepresented or omitted to disclose material facts to potential and existing retail customers which included: misrepresenting the nature of the relationship between Mintco and retail customers by stating that Mintco would act in their best interest and as customers' agent or representative; not adequately disclosing the break-even price of investments in precious metal in financed transactions; and omitting to inform customers that in excess of 80% of the retail customers' investments in financed and fully paid stored precious metal failed to appreciate enough during the relevant period to cover the costs associated with the investment and earn a profit.

## B.     CONCLUSIONS OF LAW

**Jurisdiction and Venue**

38.     During the Relevant Period, certain of the transactions described in this Consent Order were offered by Mintco and: (a) entered into on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis; (b) entered into with persons who are not ECPs; and (c) were not made or

conducted on, or subject to, the rules of any board of trade, exchange or contract market, or

derivatives transaction execution facility that was designated or registered by the Commission.

39.     This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that

any person has engaged, is engaging, or is about to engage in any act or practice constituting a

violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the

Commission may bring an action in the proper district court of the United States against such

person to enjoin such act or practice, or to enforce compliance with the Act, or any rule,

regulation or order thereunder.

40.     With respect to Mintco's non-financed fully paid transactions for precious metal

in storage, the Commission has jurisdiction over the conduct and transactions at issue pursuant to

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012).

41.     Effective July 16, 2011, the Dodd-Frank Act broadened the scope of the CFTC's

jurisdiction to include financed commodity transactions with retail customers.  The new Section

2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012), applies, subject to certain exceptions, to

"any agreement, contract, or transaction in any commodity" that is entered into with, or offered

to, a person who is not an ECP "on a leveraged or margined basis, or financed by the offeror, the

counterparty, or a person acting in concert with the offeror or counterparty on a similar basis,"

with respect to conduct occurring on or after July 16, 2011.

42.     Pursuant to Section 2(c)(2)(D)(iii) of the Act, 7 U.S.C. § 2(c)(2)(D)(iii) (2012),

such retail commodity transactions are subject to Sections 4(a), 4(b), and 4b of the Act, 7 U.S.C.

§§ 6(a), 6(b), and 6b (2012), "as if" they are a contract of sale of a commodity for future

delivery.  As a result, these transactions must be executed on an exchange and are subject to

Sections 4(a) and 4b of the Act, 7 U.S.C. §§ 6(a), 6b (2012).

43.     Under Section 2(c)(2)(D)(ii) of the Act, 7 U.S.C. § 2(c)(2)(D)(ii) (2012),

transactions that result in actual delivery of precious metals to customers within 28 days are

excepted from this requirement (the "28-day exception").  To make actual delivery, the seller in

a financed transaction must secure and deliver the contracted amount of physical metal for each

customer within 28 days of its acceptance of the customer's order.  For actual delivery to result,

the transaction must include "a transfer of possession and control."  *CFTC v. Hunter Wise*

*Commodities, LLC*, 749 F.3d 967, 978 (11th Cir. 2014).

44.     Mintco never made "actual delivery" of precious metal in storage to customers.

45.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C.

§ 13a-1(e) (2012), because Defendants reside in this District, Defendants transacted business in

this District, and certain transactions, acts, and practices alleged in the Complaint and described

herein, occurred, are occurring, and/or are about to occur within this District.

**Off-Exchange Transactions**

46.     Between July 16, 2011, and the present, Mintco has offered to enter into, entered

into, executed, confirmed, or conducted an office or business in the United States for the purpose

of soliciting, accepting orders for, or otherwise dealing in agreements, contracts, or transactions

in commodities (the "retail commodity transactions") on a leveraged or margined basis, or

financed by the offeror, the counterparty, or a person acting in concert with the offeror or

counterparty on a similar basis, with persons who are not eligible contract participants or eligible

commercial entities as defined by the Act, and who are not engaged in a line of business related

to precious metals.

47.     The retail commodity transactions engaged in by Mintco have not been made or conducted on, or subject to, the rules of any board of trade, exchange, or contract market. Furthermore, Mintco conducted these transactions with non-ECPs, and actual delivery did not occur within 28 days.

48.     Mintco has therefore violated Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012), by offering to enter into, entering into, executing, confirming the execution of, or conducting an office or business in the United States for the purpose of soliciting, accepting orders, or otherwise dealing in any transaction in, or in connection with retail commodity transactions, other than on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market.

49.     The acts, omissions, and failures of Mintco's officials, agents, or persons acting for Mintco have occurred within the scope of their employment, agency, or office with Mintco; therefore pursuant to Section 2(a)(1)(B), 7 U.S.C. § 2(a)(1)(B) (2012) and Regulation 1.2, 17 C.F.R. § 1.2 (2016), Mintco is liable for these acts, omissions, and failures by its officials, agents, or persons acting for Mintco in violation of Section 4(a), 7 U.S.C. § 6(a) (2012).

50.     Each act of offering to enter into, entering into, executing, confirming the execution of, or conducting any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, retail commodity transactions, other than on or subject to the rules of a board of trade that has been designated or registered by the Commission as a contract market, is alleged as a separate and distinct violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2012).

**Registration with Respect to Financed Transactions**

51.     The Dodd-Frank Act amended the definition of "futures commission merchant" in the Act to include any individual, association, partnership, corporation, or trust that, among other things, is engaged in accepting orders for any agreement, contract, or transaction described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (2012).

52.     Between July 16, 2011 and the present, Mintco, through its agents and employees, accepted orders for agreements, contracts, or transactions described in Section 2(c)(2)(D)(i) of the Act, 7 U.S.C. § 2(c)(2)(D)(i) (2012).

53.     Section 4d of the Act, 7 U.S.C. § 6d (2012), provides that it shall be unlawful for any person to be a futures commission merchant unless such person shall have registered with the Commission as a futures commission merchant.

54.     During the relevant period, Mintco failed to register with the Commission as a futures commission merchant and has therefore violated Section 4d of the Act, 7 U.S.C. § 6d (2012).

55.     Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

56.    By intentionally or recklessly making material misrepresentations and omissions to customers in connection with the purchase or sale of financed transactions in precious metal, Mintco defrauded and deceived them in violation of Section 4b(a)(2)(A)-(C), 7 U.S.C. § 6b(a)(2)(A)-(C) (2012).

57.    Each fraudulent or deceptive misrepresentation or omission made by Mintco constitutes a separate and distinct violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012).

58.    The foregoing acts, omissions, and failures of Mintco's officials, agents, or persons acting for Mintco described in this Complaint have occurred within the scope of their employment, agency, or office with Mintco; therefore pursuant to Section 2(a)(1)(B), 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2016), Mintco is liable for these acts, omissions, and failures by its officials, agents, or persons acting for Mintco in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) .

59.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), provides, in relevant part, that "[i]t shall be unlawful for any person, directly or indirectly, to use or employ or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate."

60.    Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016), provides in relevant part, that "[i]t shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly:  Use or employ, or

attempt to use or employ, any manipulative device, scheme, or artifice to defraud; Make, or

attempt to make, any untrue or misleading statement of a material fact or to omit to state a

material fact necessary in order to make the statements made not untrue or misleading; Engage,

or attempt to engage, in any act, practice, or course of business, which operates or would operate

as a fraud or deceit upon any person."

61.     From July 2011 through the present date, Mintco intentionally or recklessly used

or employed deceptive devices or contrivances, in connection with a contract of sale of a

commodity in interstate commerce, by making material misrepresentations and omissions to

customers in connection with the purchase or sale of precious metal in storage.

62.     Mintco used the mails or other instrumentalities of interstate commerce by

transmitting orders for retail commodity transactions over wires in interstate commerce.

63.     By this conduct, Mintco violated Section 6(c)(1) of the Act, 7 U.S.C. § 9(1)

(2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016).

64.     Each deceptive device or contrivance used or employed including, but not limited

to those specifically alleged herein, is alleged as a separate and distinct violation of Section

6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016).

65.     The acts, omissions, and failures of Mintco's officials, agents, or persons acting

for Mintco have occurred within the scope of their employment, agency, or office with Mintco;

therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation

1.2, 17 C.F.R. § 1.2 (2016), Mintco is liable for these acts, omissions, and failures by its

officials, agents, or persons acting for Mintco in violation of Section 6(c)(1) of the Act, 7 U.S.C.

§ 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016).

15

## IV.    PERMANENT INJUNCTION

**IT IS ORDERED AND ADJUDGED THAT:**

66.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012):

        a.     Mintco is permanently restrained, enjoined and prohibited from directly or indirectly violating Sections 4(a), 4b(a)(2)(A) – (C), 4d and 6(c)(1) of the Act, 7 U.S.C. §§ 6(a), 6b(a)(2)(A) – (C), 6d, 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2016);

## V.    CIVIL MONETARY PENALTY

67.     Mintco shall pay a civil monetary penalty in the amount of two-hundred fifty thousand dollars ($250,000) (the "CMP Obligation"), within ten (10) days of the date of the entry of this Consent Order.

68.     Mintco shall be solely liable and responsible for payment of its CMP Obligation. If Mintco's CMP Obligation is not paid in full within ten (10) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2012).

69.     Mintco shall pay its CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
ATTN: Accounts Receivables
DOT/FAA/MMAC/AMZ-341
CFTC/CPSC/SEC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-7262 office
(405) 954-1620 fax
nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Mintco shall contact Nikki Gibson or

her successor at the address above to receive payment instructions and shall fully comply with

those instructions.  Mintco shall accompany payment of the CMP Obligation with a cover letter

that identifies Mintco and the name and docket number of this proceeding.  Mintco shall

simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street,

NW, Washington, D.C. 20581.

70.     Partial Satisfaction: Acceptance by the Commission of any partial payment of

Mintco's CMP Obligation shall not be deemed a waiver of its obligation to make further

payments pursuant to this Consent Order, or a waiver of the Commission's right to seek to

compel payment of any remaining balance.

## VI.     MISCELLANEOUS PROVISIONS

71.     Notice: All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

Case No. 15-cv-61960-BLOOM

Notice to Commission:

Rosemary Hollinger
Deputy Director
Division of Enforcement
Commodity Futures Trading Commission
525 W Monroe St., Suite 1100
Chicago, IL 60661

All such notices to the Commission shall reference the name and docket number of this action.

Notice to Mintco:

Mintco, LLC
2881 East Oakland Park Blvd., Suite 104
Fort Lauderdale, FL 33306

With a copy to:

Peter W. Homer
Homer Bonner Jacobs, P.A.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131

72.     Change of Address/Phone: Until such time as Mintco satisfies in full its CMP

Obligation as set forth in this Consent Order, Mintco shall provide written notice to the

Commission by certified mail of any change to its telephone number and mailing address within

ten (10) calendar days of the change.

73.     Entire Agreement and Amendments: This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing;

(b) signed by all parties hereto; and (c) approved by order of this Court.

74.     Invalidation: If any provision of this Consent Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Consent Order and the

18

application of the provision to any other person or circumstance shall not be affected by the holding.

75.     Waiver: The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

76.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Mintco to modify, or for relief from, the terms of this Consent Order.

77.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Mintco, upon any person under its authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, email, facsimile or otherwise insofar as he or she is acting in concert or participation with Mintco.

78.     Authority: Mintco LLC hereby warrants that the undersigned, Stuart Rubin, is a principal of Mintco, this Consent Order has been duly authorized by Mintco, and that Stuart Rubin has been duly empowered to sign and submit this Consent Order on behalf of Mintco.

79.     Counterparts and Facsimile Execution: This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto

Case No. 15-cv-61960-BLOOM

and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all

parties need not sign the same counterpart.  Any counterpart or other signature to this Consent

Order that is delivered by any means shall be deemed for all purposes as constituting good and

valid execution and delivery by such party of this Consent Order.

80.     Contempt: Mintco understands that the terms of the Consent Order are

enforceable through contempt proceedings, and that, in any such proceeding it may not challenge

the validity of this Consent Order.

81.     Agreements: Mintco shall comply with all of the agreements set forth in this

Consent Order.

**DONE AND ORDERED** in Miami, Florida on this 18th day of December, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

**CONSENTED TO AND APPROVED BY:**

Mintco LLC,

_____
Stuart Rubin, on behalf of Mintco LLC

**APPROVED AS TO FORM:**

By: /s/ Peter W. Homer

Peter W. Homer, Counsel
Homer Bonner Jacobs
1200 Four Seasons Tower
1441 Brickell Ave.,

U.S. Commodity Futures Trading
Commission
525 W. Monroe St., #1100
Chicago, IL 60661

By: /s/ Rosemary Hollinger
Rosemary Hollinger
Deputy Director
Division of Enforcement
(312) 596-0520
*rhollinger@cftc.gov*

By: /s/ David Terrell
David Terrell
Chief Trial Attorney
(312) 596-0539

20

Case No. 15-cv-61960-BLOOM

Miami, Florida 33131
*PHomer@homerbonner.com*

Dated:  _____, 2017

*dterell@cftc.gov*

By: <u>/s/ Jon J. Kramer</u>
Jon J. Kramer
One of the Attorneys for Plaintiff
(312) 596-0563
*jkramer@cftc.gov*

By: <u>/s/ Susan B. Padove</u>
Susan Padove
One of the Attorneys for Plaintiff
 (312) 596-0544
*spadove@cftc.gov*

By: <u>/s/ Brigitte Weyls</u>
Brigitte Weyls
One of the Attorneys for Plaintiff
(312) 596-0547
*bweyls@cftc.gov*

Dated:_____, 2017

21